**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DR. DONNA HESTON,**

**Plaintiff,**

**v.**

**Civil Action No. 1:26-cv-92-TSK**
**Judge Thomas S. Kleeh**

**THE MARION COUNTY BOARD OF EDUCATION;**

**DONNA COSTELLO, in her individual and official capacity as a member of the Marion County Board of Education;**

**KEVIN ROGERS, in his individual and official capacity as a member of the Marion County Board of Education; and**

**JAMES SAUNDERS, in his individual and official capacity as a member of the Marion County Board of Education,**

**Defendants.**

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS DONNA COSTELLO'S AND KEVIN ROGERS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND MOTION TO STRIKE**

COMES NOW the Plaintiff, Dr. Donna Heston, by counsel, Ryan J. Umina, Esq., and the law firm of Umina Legal, PLLC, and for her Response in Opposition to the Motion to Dismiss Plaintiff's First Amended Complaint filed by Defendants Donna Costello and Kevin Rogers (ECF No. 11) and their supporting Memorandum of Law (ECF No. 11-1) ("Mem."), states as follows:

## I. INTRODUCTION

Defendants Costello and Rogers are two elected members of the Marion County Board of Education. Their principal argument is that because the Board acts by majority vote, no individual member can be held personally liable. On that theory, the more officials who join in a

discriminatory act, the less any of them is responsible for it. That has never been the law. A public official sued in her individual capacity answers for what she personally did, and the First Amended Complaint ("FAC"), ECF No. 3, alleges what these two Defendants personally did, largely in their recorded words.

Defendant Costello interrogated the Superintendent on tape about a rumored relationship with another woman, told her "it's not a debate," told her to "set the affair aside" and to "put your big girl panties on," and, when asked whether male administrators were sleeping together, answered, "Well, that's not my business." FAC ¶¶ 51–52, 58, 61–62, 65–66. Defendant Rogers monitored the two women's social media and demanded that the Superintendent recuse herself. *Id.* ¶ 75. Together they met in secret with a subordinate and told him how they would vote on the Superintendent's contract; Defendant Costello said, "We're not supposed to say stuff," and they kept going. *Id.* ¶¶ 68–71. They then voted against every renewal term eleven days after a positive evaluation, and publicly stated no reason. *Id.* ¶¶ 106–114, 120.

Defendants' remaining arguments answer a complaint Dr. Heston did not file. She does not assert a novel right belonging to persons of "perceived sexual orientation." She alleges that two public officials treated a woman differently than they treated men, on a stereotype about women. That right has been clearly established for decades. The Motion to Dismiss and the Motion to Strike should be denied.

## II. RELEVANT ALLEGATIONS

Dr. Heston has served as Superintendent of Marion County Schools since July 1, 2021. FAC ¶ 7. Defendants Costello and Rogers are elected members of the five-member Board and are sued in their individual and official capacities. *Id.* ¶¶ 15, 18, 72. Beginning no later than early 2023, they and Defendant Saunders (together, the "Individual Defendants") advanced a false

accusation that Dr. Heston was in an intimate same-sex relationship with Kristin DeVaul, the County's Administrative Assistant of Human Resources. *Id.* ¶¶ 35–37.

*Defendant Costello.* In a recorded conversation in or about March 2023, Defendant Costello raised "nasty rumors" about the two women and remarked that "[t]he good old boy network still exists." *Id.* ¶¶ 46–48. On or about January 29, 2024, she convened a private meeting, announced "it's not a debate," and questioned Dr. Heston for about twenty-five minutes about a perceived sexual relationship with Ms. DeVaul. *Id.* ¶¶ 51–52. She tied Ms. DeVaul's position to the rumored relationship, told Dr. Heston to "set the affair aside," said "personally, I don't care," and told her to "put your big girl panties on." *Id.* ¶¶ 54, 58–59, 66. Dr. Heston identified male administrators who drank, fished, stayed out all night, and "stayed in the same rooms together," and a female supervisor and subordinate who traveled and stayed together, none of whom had ever been accused. *Id.* ¶¶ 60–64. Asked whether the men were sleeping together, Defendant Costello answered, "Well, that's not my business," and conceded, "I know it's a good old boy network and it still exists." *Id.* ¶¶ 65–66. In August 2025, she and Defendant Saunders directed in executive session that Ms. DeVaul could not leave her office, travel with the Superintendent, or visit schools (the "August 2025 Directives"); no comparable directive was ever issued to any male employee. *Id.* ¶¶ 85–86.

*Defendant Rogers.* In or about July 2025, Defendants Costello and Rogers traveled together to North Marion High School and met privately with an assistant principal, in a meeting concealed from the Superintendent. *Id.* ¶ 68. Each told that subordinate how they intended to vote on the Superintendent's contract. *Id.* ¶ 69. Defendant Costello said, "We're not supposed to say stuff," and they continued. *Id.* ¶¶ 70–71. Defendant Rogers disclosed that he had been monitoring Dr. Heston's and Ms. DeVaul's social-media accounts, cited vacation photographs, and demanded that

Dr. Heston recuse herself from any matter involving Ms. DeVaul. *Id.* ¶ 75. That scrutiny was applied to the two women and to no one else. *Id.* ¶¶ 76–77.

*The votes.* On February 5, 2026, the Board evaluated Dr. Heston as meeting standards on three goals and exceeding them on two. *Id.* ¶ 106. On February 16, Defendants Costello, Rogers, and Saunders voted against a three-year, a two-year, and a one-year renewal, each failing two to three. *Id.* ¶¶ 108, 110–112 & Ex. 2. Defendant Costello then moved, seconded by Defendant Rogers, to let the contract expire and search for a new Superintendent. *Id.* ¶ 113. Neither publicly stated a reason. *Id.* ¶ 120.

*After notice.* On or about March 2, 2026, counsel submitted a written demand. On March 2, Defendants Costello and Rogers joined a unanimous vote to return her contract to the agenda, and the Board learned of Dr. Heston's claims in executive session. *Id.* ¶¶ 124, 126–128. Three days later they voted against reconsideration and against a one-year term. *Id.* ¶¶ 135–138. On March 9, through a privately retained lawyer, they demanded records of the compensation and travel of the Superintendent and central-office administrators. *Id.* ¶ 145. On or about April 30, Defendant Costello told an assistant principal that her mood was poor because she had to look at "the woman who filed a half-million dollar lawsuit against her." *Id.* ¶ 159. In July 2026, both were named co-vice presidents by Defendant Saunders. *Id.* ¶¶ 167–171.

## III. STANDARD OF REVIEW

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. In deciding it, the Court "must accept as true all of the factual allegations contained in the complaint." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 188 (4th Cir. 2007) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), but a complaint survives when it

pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Three further rules apply here. First, an employment discrimination plaintiff need not plead a prima facie case; she must allege facts that make discrimination plausible. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002); *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584–85 (4th Cir. 2015). Second, the Court draws all reasonable inferences in the plaintiff's favor, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011), and whether a comparator is similarly situated is an evidentiary question that generally should not be resolved on a motion to dismiss. *Woods v. City of Greensboro*, 855 F.3d 639, 650–51 (4th Cir. 2017). Third, the Court considers the complaint and its exhibits, *see* Fed. R. Civ. P. 10(c), not a defendant's competing account of the facts. *See* Fed. R. Civ. P. 12(d).

Qualified immunity may be raised on a Rule 12(b)(6) motion, but dismissal on that ground is appropriate "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (quoting *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011)). Asserted this early, the defense "faces a formidable hurdle" and "is usually not successful." *Owens v. Balt. City State's Att'ys Office*, 767 F.3d 379, 396 (4th Cir. 2014) (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)).

Defendants' statement that dismissal is proper where "no relief could be granted under any set of facts," Mem. at 4, recites the formulation the Supreme Court retired in *Twombly*, 550 U.S. at 563. Plaintiff does not rely on it.

## IV. ARGUMENT

### A. Count IV States an Equal Protection Claim Against Defendants Costello and Rogers.

#### 1. Board members answer personally for what they personally do.

Defendants argue that because the Board "operates by vote of its membership," neither of them "could have taken affirmative action, in their individual capacity," and that claims based on their votes are, by definition, official-capacity claims. Mem. at 8–9, 15. The Supreme Court rejected that reasoning in *Hafer v. Melo*, 502 U.S. 21 (1991). The distinction between official- and individual-capacity suits turns on "the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Id.* at 26. Officials sued individually are "persons" under § 1983 and may be held personally liable for actions taken in their official roles. *Id.* at 31.

Section 1983 reaches "[e]very person" who, under color of law, "subjects, or causes to be subjected," another to a deprivation of federal rights. 42 U.S.C. § 1983. The question is whether the defendant "acted personally in the deprivation." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1971)); *see Iqbal*, 556 U.S. at 676. Casting a vote is a personal act. School board members have been personally answerable under § 1983 for their official votes for half a century. *See Wood v. Strickland*, 420 U.S. 308, 322 (1975) (school board members entitled to qualified, not absolute, immunity from damages under § 1983 for the board's decision), *abrogated in part on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The Fourth Circuit has denied absolute legislative immunity to county board members sued under § 1983 for voting to discharge an employee. *Roberson v. Mullins*, 29 F.3d

132, 134–35 (4th Cir. 1994). If Defendants were right, no member of any school board, city council, or county commission could ever be personally liable for a discriminatory vote. They cite no case so holding. The phrase "governmental decisionmakers," which Defendants emphasize, Mem. at 8, describes whom the Equal Protection Clause restrains. It does not say that only an entity can violate it.

Nor is voting the only conduct alleged. The recorded interrogations, "set the affair aside," the social-media monitoring, the recusal demand, and the concealed meeting with a subordinate were not acts of "the Board." FAC ¶¶ 46–66, 68–75, 258–259. They were done by these two Defendants, in rooms where the Board was not convened. The Memorandum's answer is that neither Defendant "can act individually to deprive Plaintiff of any benefit or protection of the Fourteenth Amendment." Mem. at 8. As alleged, each did.

Defendants add, in a footnote, that the FAC never alleges that the August 2025 Directives were "voted on by the Board or otherwise formalized." Mem. at 7–8 n.1. That cuts against them. If the Directives were not Board action, they were the personal acts of the members who issued them. The FAC alleges that Defendants Saunders and Costello gave them in executive session, that Dr. Heston objected, and that they remained in effect. FAC ¶¶ 85, 88, 93. An official who uses the authority of her office to do what the office does not authorize acts under color of state law. *See West v. Atkins*, 487 U.S. 42, 49–50 (1988). The same footnote observes that the FAC alleges no action by Defendant Rogers "in this respect." Mem. at 8 n.1. Count IV does not rest his liability on the Directives. It rests on the monitoring, the recusal demand, the concealed meeting, and his votes. FAC ¶ 259.

### 2. The FAC identifies comparators and pleads discriminatory intent.

Defendants say Dr. Heston "does not identify a single similarly situated male employee." Mem. at 9. The FAC identifies two male administrators who stayed in the same rooms together; two who fished and stayed at the same camp; two so close that each referred to the other's children as family; a male central-office employee with Ms. DeVaul's identical position code and credential who socializes publicly with Defendant Saunders and travels overnight with male colleagues; and male administrators whose travel the Board's minutes show it approved in each fiscal year from 2021–22 through 2025–26. FAC ¶¶ 61–63, 99–101. None "drew an interrogation, a recusal demand, a confinement directive, or a surveillance campaign." *Id.* ¶¶ 103–104. Defendants' Memorandum itself refers to the "so-called 'comparator' employee." Mem. at 3.

The "extremely high degree of similarity" standard Defendants borrow from *Willis v. Town of Marshall*, 275 F. App'x 227, 233 (4th Cir. 2008) (per curiam), Mem. at 6, comes from an unpublished "class of one" case, in which the plaintiff claims no protected characteristic. Dr. Heston is not a class of one. She alleges discrimination because of sex, which receives heightened scrutiny. *United States v. Virginia*, 518 U.S. 515, 531–33 (1996). Whether comparators are sufficiently similar is an evidentiary question that generally should not be decided on the pleadings. *See Woods*, 855 F.3d at 650–51. And a comparator is not required at all where other evidence supports the inference of discrimination. *See Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 545–46 (4th Cir. 2003) (Title VII).

Here there is other evidence. Defendants' authority recognizes that intent may be shown by "statements in the contemporaneous record that evince a discriminatory purpose." Mem. at 7 (quoting *Shafii v. City of Charleston*, No. 2:26-cv-00226, 2026 WL 1679177, 2026 U.S. Dist. LEXIS 129248, at *13 (S.D. W. Va. June 10, 2026)). The FAC supplies Defendant Costello's:

"[t]he good old boy network still exists"; "it's not a debate"; "set the affair aside"; "that's not my business"; "put your big girl panties on." FAC ¶¶ 48, 51, 58, 65–66. It alleges that Defendant Rogers monitored the social media of two women and of no one else. *Id.* ¶¶ 75–77. And it pleads the sequence and irregularity from which discriminatory purpose is inferred: a positive evaluation followed within eleven days by non-renewal, votes disclosed to a subordinate before the public meeting, and no publicly stated reason. *Id.* ¶¶ 69–73, 106–120; *see Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977).

**3. Count IV is a sex-discrimination claim.**

Defendants fault the FAC for citing no authority "establishing a recognized right to equal protection of those with a 'perceived sexual orientation.'" Mem. at 7. Count IV asserts no such freestanding right. It alleges that Defendants "intentionally treated Dr. Heston differently from similarly situated male administrators because of her sex and perceived sexual orientation," FAC ¶ 257, and that acting on that perception "rests upon sex-based stereotypes." *Id.* ¶ 255. The claim, in other words, is that Defendants treated a woman differently than they treated men. The Equal Protection Clause confers on public employees a right to be free from sex discrimination that is not substantially related to important governmental objectives. *Wilcox v. Lyons*, 970 F.3d 452, 458 (4th Cir. 2020); *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994); *see Davis v. Passman*, 442 U.S. 228, 234–35 (1979). Penalizing a woman for an association that the same officials ignore between men, on the premise that a woman's professional standing is explained by sex rather than merit, is sex discrimination by any definition. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 250–51 (1989) (plurality opinion). Defendants identify no governmental objective served by interrogating women about their private lives while declaring the identical conduct of men "not my business."

**B. Defendants Are Not Entitled to Qualified Immunity on the Pleadings.**

Defendants' immunity argument repeats the same mislabeling: that the right at issue belongs to persons of "perceived sexual orientation," and that Dr. Heston's assertion that the right to be free from sex discrimination was clearly established is "just that — an assertion." Mem. at 11. A defendant does not obtain immunity by renaming the plaintiff's claim.

A right is clearly established when existing precedent has "placed the statutory or constitutional question beyond debate"; a case "directly on point" is not required. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Officials can be on notice that their conduct is unlawful "even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The conduct alleged is that elected officials subjected a female employee to interrogation, social-media monitoring, a recusal demand, and adverse contract votes for an association they treated as unremarkable between men. FAC ¶¶ 257–259. The prohibition on intentional sex discrimination against public employees has been settled in this Circuit since at least 1994. *Beardsley*, 30 F.3d at 529–31; *Wilcox*, 970 F.3d at 458. That acting on sex stereotypes is acting on the basis of sex has been recognized since 1989. *See Price Waterhouse*, 490 U.S. at 250–51 (plurality opinion). No reasonable Board member from 2023 through 2026 could have believed this conduct lawful. The "specific context" Defendants invoke, Mem. at 11, is public employment and the disparate treatment of a woman relative to men. That is the paradigm case.

The FAC also alleges that Defendants knew better. Defendant Costello, confronted with men whose conduct mirrored what she was scrutinizing in two women, answered on tape: "I know it's a good old boy network and it still exists." FAC ¶ 66. After she and Defendant Rogers disclosed to a subordinate how they intended to vote, she said, "We're not supposed to say stuff," and they

kept going. *Id.* ¶¶ 69–71. Qualified immunity protects reasonable mistakes about unsettled law. Nothing alleged here was a reasonable mistake.

Because the defense turns on what Defendants did and why, and the FAC's account of both must be taken as true, the face of the FAC does not "clearly reveal[]" it. *Occupy Columbia*, 738 F.3d at 116. Defendants may raise it again on summary judgment. *Tobey v. Jones*, 706 F.3d 379, 393–94 (4th Cir. 2013).

### C. Counts V, VI, and VII State Claims Under the West Virginia Human Rights Act.

#### 1. The FAC pleads discrimination because of sex.

Defendants characterize the state-law counts as "premised upon" perceived sexual orientation and argue that the Act does not reach it. Mem. at 13–15. Dr. Heston is a woman. Counts V and VI allege discrimination and harassment because of her sex, and Count VII alleges retaliation for opposing it. FAC ¶¶ 275, 282, 292. The Act forbids discrimination because of sex "with respect to compensation, hire, tenure, terms, conditions, or privileges of employment." W. Va. Code §§ 16B-17-3(h), 16B-17-9(1). Unlike Title VII, it names "tenure." A superintendent whose multi-year tenure was voted down after a positive evaluation, by members who scrutinized her for an association they ignored between men, has pleaded discrimination in tenure because of sex. And the FAC alleges what these two Defendants in particular did after notice: three days after learning of Dr. Heston's claims, they voted against reconsideration and against even a one-year term; they then demanded compensation and travel records of the Superintendent and central-office administrators through a private lawyer; and Defendant Costello attributed her mood to "the woman who filed a half-million dollar lawsuit against her." FAC ¶¶ 135–138, 145, 159, 292–293.

Defendants rely on *Jones v. Town of Lumberport*, No. 23-ICA-540, 2024 WL 5201657, 2024 W. Va. App. LEXIS 405 (W. Va. Ct. App. Dec. 23, 2024) (memorandum decision). Mem.

at 13–14. *Jones* held, over a dissent, that the Act's prohibition of discrimination because of "sex" "does not prohibit discrimination based on 'sexual orientation.'" 2024 W. Va. App. LEXIS 405, at *9. As the majority framed the case, each of the plaintiff's claims stemmed from allegations that he was discriminated against "because of his sexual orientation," *id.* at *3; as the dissent observed, gender stereotyping was not raised by the parties and the majority did not address it. *See id.* at *37 (Scarr, C.J., dissenting). *Jones* therefore says nothing about a woman who alleges that she was treated worse than men for the same conduct, on a stereotype about women. That claim does not ask the Court to add a word to the statute. It applies the word that is there.

Nor does *Jones* bind this Court. It is a memorandum decision of a divided intermediate court. Even memorandum decisions of the Supreme Court of Appeals carry precedential value that is "necessarily more limited." Syl. Pt. 5, *State v. McKinley*, 234 W. Va. 143, 764 S.E.2d 303 (2014). This Court's task is to predict how the Supreme Court of Appeals would rule. In that inquiry the decisions of a state's intermediate appellate court "constitute the next best indicia of what state law is," but they "may be disregarded if the federal court is convinced by other persuasive data that the highest court of the state would decide otherwise." *Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002) (internal quotation marks omitted). The Supreme Court of Appeals has long construed the Act with the guidance of Title VII precedent, absent statutory variations or other compelling reasons for a different result, *Hanlon v. Chambers*, 195 W. Va. 99, 112, 464 S.E.2d 741, 754 (1995); *Barefoot v. Sundale Nursing Home*, 193 W. Va. 475, 482, 457 S.E.2d 152, 159 (1995), and under that court's test the third element of a prima facie case is that, "[b]ut for the plaintiff's protected status, the adverse decision would not have been made." Syl. Pt. 3, in part, *Conaway v. E. Associated Coal Corp.*,

178 W. Va. 164, 358 S.E.2d 423 (1986). A woman penalized for an association the same officials ignored between men pleads exactly that.

Defendants' remaining points do not change that. *State v. Butler*, 239 W. Va. 168, 799 S.E.2d 718 (2017), construed a criminal statute, W. Va. Code § 61-6-21(b), as Defendants acknowledge, Mem. at 13, and like *Jones* it concerned sexual orientation as such. The Legislature's failure to add "sexual orientation" to the Act, Mem. at 14, says nothing about a claim that rests on the word the Act already contains. And applying that word, and the Supreme Court of Appeals' but-for test, to a woman treated worse than men does not expand state law. It applies state law as it stands. *Cf.* Mem. at 14 n.3.

To the extent the FAC also pleads that discrimination based on perceived sexual orientation is discrimination because of sex under the Act, FAC ¶ 274, that is an alternative theory the Court need not resolve to deny the Motion.

**2. Board members are "persons" who may be liable for aiding and abetting.**

Defendants argue that they are not Dr. Heston's employer under the Act, that they could not have aided or abetted the Board, even officially, because "they would be conspiring with themselves," and that claims based on their votes are official-capacity claims by definition. Mem. at 15. The statute says otherwise. It is unlawful for "any person" to "aid, abet, incite, compel, or coerce any person to engage in any of the unlawful discriminatory practices defined in this section." W. Va. Code § 16B-17-9(7)(A). A "person" includes "one or more individuals." *Id.* § 16B-17-3(a). The Supreme Court of Appeals has held that "[a] cause of action may be maintained by a plaintiff employee as against another employee under the West Virginia Human Rights Act," and that the claim "may properly be based upon an allegation that the defendant employee aided

or abetted an employer engaging in unlawful discriminatory practices." Syl. Pt. 4, *Holstein v. Norandex, Inc.*, 194 W. Va. 727, 461 S.E.2d 473 (1995).

The defendant in *Holstein* was the manager of the employer's office, sued for his part in the plaintiff's discharge, and the Court held that the claim against him could proceed. 194 W. Va. at 729, 732, 461 S.E.2d at 475, 478. Its reading of the Act, the Court explained, "does not conflict with existing law, which recognizes that both an agent and his principal are liable for the agent's wrongful acts committed in furtherance of the principal's business." *Id.* at 731, 461 S.E.2d at 477. Defendants' argument confuses the Board, a body corporate that is the employer, with the natural persons who sit on it. The Board can act only through those persons. The persons who supply the discriminatory motive and cast the discriminatory votes are the ones who "aid, abet, incite, compel, or coerce" the employer's unlawful practice. On Defendants' reading, the provision could never reach an officer or principal of any employer. The Supreme Court of Appeals has held that a claim under it may be maintained against an employer's principal stockholder. *St. Peter v. Ampak-Div. of Gatewood Prods., Inc.*, 199 W. Va. 365, 373–74, 484 S.E.2d 481, 489–90 (1997) (per curiam).

Defendants' footnote observing that certain conduct in Count VI is attributed to Defendant Saunders, Mem. at 13 n.2, misses the point of a hostile work environment claim, which is assessed on "all the circumstances." *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The conduct attributed to these two Defendants is sufficient in any event. FAC ¶¶ 46–79, 113, 159.

**3. The FAC pleads the exception to statutory immunity.**

To the extent Defendants' reliance on the Governmental Tort Claims and Insurance Reform Act is meant to reach liability and not only punitive damages, the Act does not help them. An employee of a political subdivision is not immune where her acts "were with malicious purpose, in bad faith, or in a wanton or reckless manner." W. Va. Code § 29-12A-5(b)(2). The FAC pleads

that exception in each state-law count and supports it with the concealment of the North Marion Meeting from the Superintendent and the recorded acknowledgment that "we're not supposed to say stuff." FAC ¶¶ 278, 287, 294. The Memorandum does not address those allegations. Their remaining state-law arguments, that no comparator is identified and that votes are not individual acts, Mem. at 15, fail for the reasons given in Part IV.A.

**D. The Demand for Punitive Damages Should Not Be Dismissed.**

Punitive damages are a remedy, not a claim, and a Rule 12(b)(6) motion tests claims. *See Hamrick v. Rest. Mgmt. Grp., LLC*, No. 2:14-cv-02762, 2014 WL 4698489, at *2 n.4 (S.D. W. Va. Sept. 19, 2014). Defendants' arguments fail on their own terms as well.

*Section 1983.* Punitive damages are available against an individual who acts with "reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Defendants say the FAC alleges that state of mind only "in conclusory fashion." Mem. at 16. The FAC alleges that Defendant Costello acknowledged the "good old boy network" when confronted with the double standard; that both Defendants disclosed their votes to a subordinate, and kept going after Defendant Costello acknowledged they were not supposed to; that they voted down every renewal term eleven days after a positive evaluation without publicly stating a reason; that they reversed their vote three days after learning of Dr. Heston's claims; and that they then demanded compensation and travel records through a private lawyer. FAC ¶¶ 66, 69–71, 106–120, 135–138, 145–149. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), bars punitive damages against municipalities. The FAC seeks them only from the Individual Defendants in their individual capacities. FAC ¶ 268 & Prayer ¶ (e).

*State law cannot limit the federal remedy.* Defendants direct their Governmental Tort Claims and Insurance Reform Act argument to the state-law counts. Mem. at 16–17. It could not

reach Count IV in any event. With an exception not relevant here, that Act does not apply to "[c]ivil claims based upon alleged violations of the Constitution or statutes of the United States." W. Va. Code § 29-12A-18(e). Nor could it. A State may not immunize conduct that is wrongful under § 1983. *Howlett v. Rose*, 496 U.S. 356, 376–77 (1990).

*The state-law counts.* Defendants cite Syllabus Point 7 of *Monongalia County Commission v. Stewart*, 251 W. Va. 442, 914 S.E.2d 677 (2024), and stop. Mem. at 16–17. Syllabus Point 9 of the same decision states the rule that governs here: "West Virginia Code § 29-12A-7(a) prohibits the recovery of punitive damages against a political subdivision employee sued in an official capacity but does not prohibit the recovery of punitive damages against a political subdivision employee sued in an individual capacity." Syl. Pt. 9, *Stewart*, 251 W. Va. 442, 914 S.E.2d 677. Defendants Costello and Rogers are sued in their individual as well as official capacities, and punitive damages are sought from them in their individual capacities only. FAC ¶¶ 15, 18, 268 & Prayer ¶ (e). *Arbaugh v. Board of Education*, 329 F. Supp. 2d 762, 771 (N.D. W. Va. 2004), which Defendants call "virtually identical," Mem. at 17, addressed punitive damages on a state-law negligence claim. Punitive damages are an available remedy under the Human Rights Act. Syl. Pt. 5, *Haynes v. Rhone-Poulenc, Inc.*, 206 W. Va. 18, 521 S.E.2d 331 (1999).

*Section 55-7-29(a).* That statute sets the standard of proof a plaintiff must meet to obtain an "award" of punitive damages. It is not a pleading rule. In the decision Defendants cite, the punitive damages claim contained "nothing but a threadbare legal conclusion." Mem. at 17 (quoting *West v. Dolgencorp, LLC*, No. 5:21-cv-00477, 2021 WL 4343369, 2021 U.S. Dist. LEXIS 182222, at *5 (S.D. W. Va. Sept. 23, 2021)). This FAC alleges a course of conduct running from 2023 through 2026, recorded admissions, a concealed meeting, unexplained votes against a

positively evaluated Superintendent, and escalation after notice. Whether that proves actual malice by clear and convincing evidence is for the jury.

**E. The Motion to Strike Should Be Denied.**

Defendants ask the Court to strike paragraphs 124, 129, 133, 138, 158–159, 199–201, and 209–211 under Rule 12(f) because, they say, Federal Rule of Evidence 408 bars them. Mem. at 18–19. Motions to strike are "generally viewed with disfavor." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). Under Defendants' authority, material should be stricken when it "has no bearing on the subject matter of the litigation" and "its inclusion will prejudice the defendants." Mem. at 18 (quoting *Jackson v. United States*, No. 3:14-cv-15086, 2015 WL 5174238, at *1 (S.D. W. Va. Sept. 2, 2015)). Defendants show neither.

*Half of the paragraphs have nothing to do with settlement.* Paragraph 129 alleges that Defendant Saunders shared a Facebook post accusing the district of lawbreaking; paragraph 133, that his sharing and same-day deletion of it reinforce an inference of pretext. Paragraph 138 alleges that Defendants Costello and Rogers voted against reconsideration and against a one-year term. Paragraph 158 alleges that the conduct continued after the EEOC charge. Paragraph 159 alleges Defendant Costello's remark about "the woman who filed a half-million dollar lawsuit against her." Paragraph 201 alleges that the Individual Defendants consolidated the Board's leadership and that Defendant Saunders repeated the rumor. None describes an offer, a demand, or a statement made in negotiation. They describe what Defendants did after Dr. Heston asserted her rights. They are the retaliation claim.

*The rest allege the fact and timing of protected activity.* Paragraphs 124, 199–200, and 209–211 allege that counsel submitted a demand on or about March 2, 2026, that Dr. Heston tried to resolve the matter before suing, and that Defendants refused to take responsibility. Those

paragraphs disclose no term, amount, or content of any communication. Rule 408 bars compromise evidence offered "to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a). It does not bar such evidence offered "for another purpose." Fed. R. Evid. 408(b). The date on which the Board learned of Dr. Heston's claims establishes the knowledge element of retaliation, and the three days between that date and the March 5 votes are the heart of causation. FAC ¶¶ 124–128, 135–138, 247. Proving that an employer retaliated against an employee for making a claim is a different purpose from proving the claim she made. *See Carney v. Am. Univ.*, 151 F.3d 1090, 1095–96 (D.C. Cir. 1998); *Uforma/Shelby Bus. Forms, Inc. v. NLRB*, 111 F.3d 1284, 1293–94 (6th Cir. 1997). The allegations also negate any contention of undue delay, which Rule 408(b) expressly permits.

*Rule 408 governs evidence, not pleadings.* A complaint is not evidence. If the admissibility of a particular document is contested, the vehicle is a motion in limine on a developed record. The two decisions Defendants cite for striking such allegations are unpublished, and Defendants describe them as striking "allegations regarding efforts to compromise the claims asserted" and as affirming an order to strike. Mem. at 18–19. Defendants do not suggest that either required a plaintiff to plead retaliation without alleging the protected activity that provoked it. Should the Court conclude that the words "for settlement" in paragraph 124, or paragraph 199, are better omitted, the remedy is to strike those alone.

## V. CONCLUSION

WHEREFORE, Plaintiff, Dr. Donna Heston, respectfully requests that this Honorable Court deny Defendants Donna Costello's and Kevin Rogers' Motion to Dismiss Plaintiff's First Amended Complaint in its entirety; deny their Motion to Strike; in the alternative, should the Court

find any count deficiently pleaded, grant Plaintiff leave to amend; and grant such other and further relief as the Court deems just and proper.

DR. DONNA HESTON,
By Counsel,

/s/ Ryan J. Umina
Ryan J. Umina, Esq. (W. Va. Bar No. 13056)
UMINA LEGAL, PLLC
133 Greenbag Road
Morgantown, WV 26501
Phone: (304) 838-8024
ryan@uminalegal.com
*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DR. DONNA HESTON,**

**Plaintiff,**

**v.**

**Civil Action No. 1:26-cv-92-TSK**
**Judge Thomas S. Kleeh**

**THE MARION COUNTY BOARD OF EDUCATION;**

**DONNA COSTELLO, in her individual and official capacity as a member of the Marion County Board of Education;**

**KEVIN ROGERS, in his individual and official capacity as a member of the Marion County Board of Education; and**

**JAMES SAUNDERS, in his individual and official capacity as a member of the Marion County Board of Education,**

**Defendants.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of October, 2026, I electronically filed the foregoing **Plaintiff's Response in Opposition to Defendants Donna Costello's and Kevin Rogers' Motion to Dismiss Plaintiff's First Amended Complaint and Motion to Strike** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Thomas E. Buck, Esq.
Mark A. Kepple, Esq.
Isabella M. Ortiz, Esq.
Bailey & Wyant, PLLC
1219 Chapline Street
Wheeling, WV 26003
tbuck@baileywyant.com
mkepple@baileywyant.com
iortiz@baileywyant.com
*Counsel for Defendant Marion County Board of Education*

Heather M. Noel, Esq.
J. Robert Russell, Esq.
Shuman McCuskey Slicer PLLC
300 Wedgewood Drive, Suite 110
Morgantown, WV 26505
hnoel@shumanlaw.com
rrussell@shumanlaw.com
*Counsel for Defendants Donna Costello and Kevin Rogers*

I further certify that on the same date I served a true copy of the foregoing by electronic mail and by first-class United States Mail, postage prepaid, upon the following counsel, who has not yet appeared on the CM/ECF docket:

Keith C. Gamble, Esq.
Litchfield Cavo LLP
8 Capitol Street, Floor 4
Charleston, WV 25301
gamble@litchfieldcavo.com
*Counsel for Defendant James Saunders*

/s/ Ryan J. Umina
Ryan J. Umina, Esq. (W. Va. Bar No. 13056)
UMINA LEGAL, PLLC
133 Greenbag Road
Morgantown, WV 26501
Phone: (304) 838-8024
ryan@uminalegal.com